FILED
CLERK

9:43 am, May 26, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

SEOUL SEMICONDUCTOR CO., LTD, . Civil No. 19-cv-04951
ET AL,                        .
           Vs.                .
                              . 100 Federal Plaza
SATCO PRODUCTS, INC., ET AL,  . Central Islip, NY 11722
                              .
                              . DATE May 24, 2021
. . . . . . . . . . . . . . . .
```

                    TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE GARY R. BROWN
                      UNITED STATES DISTRICT JUDGE

APPEARANCES:


For The Plaintiffs:      STEPTOE & JOHNSON, LLP
                         BY: MICHAEL EISENBERG, ESQ.
                         1114 Avenue of the Americas, 35th Fl
                         New York, NY 10036

                         RADULESCU, LLP
                         BY:  ETAI LAHAV, ESQ.
                         3 Penn Plaza, 19th Floor
                         New York, NY 10001

For The Defendants:      GREENBERG TRAURIG
                         BY:  NICHOLAS BROWN, ESQ.
                              SCOTT BORNSTEIN, ESQ.
                         200 Park Avenue
                         New York, NY 10166

                         LYNN GARTNER DUNNE
                         BY:  ROBERT LYNN, JR., ESQ.
                         330 Old Country Road, Suite 103
                         Mineola, NY 11501

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
_____

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**(732) 263-0044    Fax No. 732-865-7179**
800 603-6212
**www.tgribbentranscription.com**

1    THE CLERK: Calling case civil 2019-4951, Seoul
2 Semiconductor Company, Ltd. versus Satco Products Incorporated,
3 counsel please state your appearance for the record.
4    MR. EISENBERG: This is Michael Eisenberg of Steptoe
5 and Johnson, LLP, on behalf of the plaintiffs. With me as well
6 I have Etai Lahav of Radulescu, LLP, also on behalf of the
7 plaintiffs.
8    MR. BROWN: This is Nick Brown, Greenberg Traurig
9 representing Satco. With me, Scott Bornstein also with GT, and
10 Robert Lynn of Lynn Gartner Dunne.
11    THE COURT: Okay, counsel, you sound very muffled I
12 don't know if you can get closer to the mic, or use something
13 else. But it's a little hard to hear you.
14    MR. BROWN: Is it better?
15    THE COURT: That's better. Thank you.
16    MR. BROWN: Okay.
17    THE COURT: Is that everyone?
18    MR. EISENBERG: I believe so, Your Honor. But I did
19 hear a ding somewhere along the way, so I, this is Michael
20 Eisenberg. I'm worried that somebody else joined, so just in
21 case I will ask. Did somebody else join from plaintiff's side.
22 Sorry, must have been an errant ding.
23    THE COURT: You know what, it could be an intern or a
24 member of the public. It could be lots of things. So I've
25 gotten used to the dings. So, this is Judge Brown. So we're

here today to talk about a number of things. But I think the most pressing issue is the pending Markman hearing. Someone want to take the lead on that?

MR. EISENBERG: Your Honor, I would be glad to, this is Mr. Eisenberg again. To go through some of the history here, Your Honor, and I think the context is helpful. We, the parties had originally at Judge Gold's suggestion, agreed to have the Markman hearing before him. We had done the briefing under that belief and schedule before Judge Gold announced on a call that he would be retiring and was unlikely to be able to have the hearing and issue an order in time before he retired.

At that time Judge Gold asked the parties what did we suggest that the parties do regarding the potential for the upcoming hearing. And at that time the decision was made to ask that the issue of claim construction be returned to Your Honor to hold a hearing and decide the issues. And we had a discussion and collectively came to that.

We submitted a motion to Judge Gold, or I believe a letter. And after that things, as many things happen in the last year, became very complicated. And among the issues that came up along that time was how we would address the distinction between the patents that had been subject to interparties review and that are still subject to interparties review to this day, as distinct from those that would be continued in the case.

1 So my understanding of how this last issue would be
2 addressed was that the case was stayed, but only as to those
3 patents that had been subject to a granted interparties review.
4 And that leaves us at this time with a letter
5 requesting that the Markman hearing be returned to Your Honor.
6 And the need to adjust or adopt a schedule, to the extent that
7 Your Honor is still willing and able to conduct that hearing.
8 And that's my understanding of how we get to be here today.
9 THE COURT: Okay. Would anyone else to comment on
10 that before we discuss it further?
11 MR. BROWN: Your Honor, this is Nick Brown. And I
12 think (indiscernible - audio skip) that's why we're here today.
13 THE COURT: Okay, I'm sorry, you know what, I did have
14 trouble hearing you that time. I assume, but it sounded like
15 you assented generally to counsel's comments, is that about
16 right?
17 MR. BROWN: Yes, Your Honor, that's about right.
18 THE COURT: Okay. So, indeed, so this is an
19 interesting situation. You know, I wanted to be able to come
20 to you to be able to work the impossible, you know, Judge Gold
21 retired. You know, he was so invested in the case, he had done
22 so much with you. And I thought if only there were a way that
23 we could, you know, have him do this. And I thought of one.
24 I want to be clear before I sort of front this plan
25 to the parties. This is completely voluntarily. There would be

no prejudice if you don't like the idea. But I just thought I would, I would front it for you all.

I know that in certain patent cases we've used special masters for certain pieces and so forth. Judge Gold is out there sort of practicing with JAMS and so forth, so he's still available. Of course he'd have to be retained. The only reason why I feel even comfortable suggesting it is because he's put so much time into the case that I don't think it would be a heavy lift in terms of the retention. In other words, I think he knows the background. He could get up to speed on the specific Markman issues, which I think he had already started.

If the parties were interested I would be happy to make a referral to him as a special master to take a look at it. Of course you don't have to agree to that. But let me tell you what the other side of the coin looks like. I know Judge Shields is on the case. And she's an excellent jurist. I don't think she has a particular background in, with patents or technical matters. So she may not be the best fit for this particular project. Though I can trust her with so many things that it wouldn't surprise me if she did a great job.

That would leave you with me and in terms of my situation, I do have a background in patents, I'm very interested. I love this area of litigation. The problem is we're coming off the COVID backlog right now. And I'm going to be jammed up with criminal cases. And the problem with that

1  is, it's already been problematic in the sense that I have
2  criminal cases, civil jury trials, and so forth, and it's just
3  been inconsistent.  Meaning that if I were to do this, I'd have
4  to do it in pieces.
5         Well let me actually go back to counsel. How long do
6  we think the Markman hearing would be?  I mean I think there's
7  something like 25 terms at issue. I know that's quite
8  substantial.  But what are we thinking in terms of time?
9         MR. EISENBERG: Your Honor, this is Mr. Eisenberg
10 again.  I'm not sure all 25 of those terms remain at issue.
11 I'd have to go back through and make sure some of them might
12 not be -- based on the stayed patents and exactly how many
13 remain.  We did briefly discuss this issue with Judge Shields
14 and had slightly differing views on sort of different ways that
15 this could be done.  There is some desire to have a tutorial
16 live for the Court and potentially have live testimony.
17        I still think given the scope of what's at issue,
18 that this could be completed in a day.  And that at the very
19 least we could schedule for one day.  And that if things went
20 for lack of a better word sideways and required more time, we
21 could address that then.
22        But I do think one full day would be sufficient to
23 get through this. But I understand that defense counsel may
24 have a different view of that.
25        THE COURT: Okay, have at it, what do you say to that?

1       MR. BROWN: Your Honor, this is Nick Brown again.  I
2  do think it's possible we could get this done in one day. I
3  think given the nature of the subject matter it's very
4  important to have witnesses available to the Court, technical
5  experts available to the Court. And I think a tutorial makes
6  sense.
7       My experience has generally been that it's useful to
8  have the tutorial at least a little bit in advance of the
9  hearing, perhaps the day before.  But that doesn't mean it
10 couldn't happen the same day.  I think it's really up to the
11 Court.
12      THE COURT: But --
13      MR. BROWN: I also have another --
14      THE COURT: But you're saying two days would be sort
15 of an outside amount of time for this?
16      MR. BROWN: I think that's right.  I think it's going
17 to be less than two days.  I think it's more like a day with
18 perhaps a few hours before that.
19      THE COURT: Okay.  That's much different than what I
20 anticipated.  But please continue.
21      MR. BROWN: The only other thing I was going to add,
22 Your Honor, is one place where we differ from plaintiffs, is
23 that we think it would be helpful to the Court for us to file
24 summary judgment motions on the four patents that remain at
25 issue in the case that aren't stayed.  We believe that that

could very much simplify the issues (indiscernible - audio skip) could file requests to file those motions. To put it briefly, we believe that under any claim construction Satco cannot infringe the four patents that remain in the case. And we plan to file motions to that effect.

If we do that, that could completely obviate the need for any Markman hearing at all on those four patents. And so we would suggest that we do that first.

THE COURT: Well okay, counsel, you did break up a little there. I'm going to ask you to repeat a few of those things. It is an unusual day when someone says to me, hey Judge, I have a great idea, what would be helpful to the Court would be either file a summary judgment motion in a very technical case before we give you access to the technical expert. You see why that does sound a little counterintuitive, yes?

MR. BROWN: I do understand, Your Honor. I think if we did it that way, once we file the papers it would be clear why we were doing it. But I understand why it sounds counterintuitive.

THE COURT: And you could be exactly right, I might look at that summary judgment motion and say this is the greatest thing since sliced bread. Another thing that's subject of a patent a very long time ago. But I suspect when I say I have a background with patent proceedings, I've done some

as a Judge. I worked somewhat in the private sector, but that was all computer software work. So I'm not sure I'm going to be able to jump into this at full speed.

MR. BROWN: I understand Your Honor. I just wanted to get out what the differences were between us about how we think this would be most efficient to move the case forward.

THE COURT: Right. Do you all have in mind a sort of joint expert on the technical stuff? Or would you be having, presenting with competing experts?

MR. EISENBERG: This is Mr. Eisenberg again. We would be having separate experts. It is my hope that a lot of this can be done, at least with respect to the tutorial, through attorney argument with the assistance of the experts. And the way I envision this, just as counsel for defense, to keep things moving, what I most like in a hearing like this, is when the Court is interested in a subject, and driving the content and the direction of what we're doing, based on where the Court most desires clarification. And that is where I think an expert has the highest and best use.

I think there could be a part of the tutorial that the expert could do as well. But for the most part, and maybe it's just because I'm an attorney and I like doing a lot of the talking, that a quick way to get through, at least a lot of the noncontroversial issues or the simple ones, is to allow that to come in through the attorneys with more difficult subjects or

1 points of contention with the assistance of each party, the
2 expert most usefully on the issues that that party is moving
3 for. And then asking for in the claim construction. And then
4 obviously the other side would likely come back with their own
5 expert.

6 THE COURT: Okay. I mean, one of the problems I have
7 is because of the trial schedule, I'm just looking at the
8 calendar here, you know, what I've been doing in civil cases
9 is, you know, calling people in on a short notice, meaning I
10 just had a couple of days open up, and guess what, you're on.

11 Having had familiarity from your side of things,
12 meaning knowing about the costs and expenses and difficulties
13 of a proceeding like this, I'm not sure that's an ideal
14 arrangement for you. That's one of my concerns. What do you
15 think about that?

16 MR. EISENBERG: This is Mr. Eisenberg again.
17 Obviously we're going to have experts, having them on call for
18 any extended period of time, with travel involved, could be
19 difficult. There could be a potential to ameliorate that if we
20 could have that part of the proceeding done by video, even
21 though many of us would still hopefully be in court live. And
22 there are ways, especially in the modern world, to make things
23 work.

24 To be frank with Your Honor, I'm also pondering the
25 idea that you had with having a special master. I think that's

1 something that I would definitely need to discuss with both my
2 client and opposing counsel, to see where the parties are. But
3 I do, and this might not be what you want to hear, but I do
4 take to heart that you are a Judge who is interested and enjoys
5 patent cases. Maybe not as much as I do. But at least
6 somewhat.

7 THE COURT: Yes.

8 MR. EISENBERG: So, I'm glad to hear that. And I
9 love doing this. And I want to be in court as soon as possible
10 doing this for you live. But I understand the difficulties
11 with that.

12 THE COURT: Yes. Does opposing counsel want to
13 respond to that at all?

14 MR. BROWN: No, Your Honor, this is Nick Brown. I
15 think it could be difficult. It would depend on the amount of
16 notice, it depends on the (indiscernible - audio skip) I think
17 is my general response.

18 THE COURT: Well all right, so let me do this this
19 way, which is, I came to the table today with a thought, and I
20 had called Judge Gold just to, I wouldn't do anything without
21 letting you know. But I just called to see would he generally
22 be available to take on something like this. He said yes. But
23 of course it wouldn't have to be him. In other words if you
24 call came back to me and said, you know, Judge that's fine, and
25 he does know the case, and it's going to save some time. That's

one way. But, we also have this expert or this individual we could agree on has a great deal of expertise. And there would be other savings or other, you know, talents that person brings to the table.

So we like the special master idea, but we'd go with this person instead. And be clear please, you don't have to go with a special master. It's just that, we're just in a very, very odd period right now. And it's going to take a while before things are back to normal.

In a normal case, thinking of when I was a Magistrate Judge, just a little while ago, I would have loved this. I would have grabbed it and said come in as soon as you want and we'll stay as long as you want. But I don't have that luxury right now.

So let me do this. Let me, why don't we put this over for a week. I'll let you go talk to your clients, think about it, talk to each other. And maybe we can put this on for another phone conference in a week or so, and we'll figure out where we'll go from there. Does that make sense?

MR. EISENBERG: I believe so, Your Honor. This is again Mr. Eisenberg. And I think that's a terrific idea. All of this has been just trying to help us out, getting this moving forward. I very much personally appreciate and I appreciate the ability to take that time and rally the troops and see where people are on this.

1          THE COURT: Okay. Any objection on the other side?

2          MR. BROWN: No, Your Honor, it sounds good to us.

3          THE COURT: Okay. Good. So Karen, do we have a date
4 next week some time?

5          THE CLERK: June 2nd, at 10:30.

6          THE COURT: Does that work for everybody?

7          MR. EISENBERG: That should work from plaintiffs'
8 side.

9          MR. BROWN: I'm just checking, just give me a second.

10          THE COURT: Sure. Absolutely.

11          MR. BROWN: Yes, that works for Satco.

12          THE COURT: Okay, very good. So I will talk to you
13 all then. In the meantime please talk to your clients and talk
14 to each other, just you know, make sure if you can get on the
15 same page on this, whatever the answer is, and counsel again,
16 no prejudice either way, if you say Judge, we want to stay with
17 you, recognizing that's going to be a little, may be the less
18 convenient for us. I'll be happy to do it. I recognize it's
19 an important case and I don't want to rush anything.

20          So we'll talk in a week and we'll figure it out then,
21 sound good?

22          MR. EISENBERG: Sounds terrific, Your Honor. Thank
23 you so much.

24          MR. BROWN: Okay.

25          THE COURT: All right, counsel, thank you for the

presentation.  As always this case is well presented.  So I appreciate that.  I'll talk to you next week, all right?  Thanks, bye.

* * * * *

**C E R T I F I C A T I O N**

I, **PATRICIA POOLE**, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/S/ PATRICIA POOLE
TRACY GRIBBEN TRANSCRIPTION, LLC          DATE: May 25, 2021